**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| CATO INSTITUTE<br><br>and<br><br>MACKINAC CENTER FOR PUBLIC POLICY<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, Secretary, U.S. Department of Education, in his official capacity;<br><br>RICHARD CORDRAY, Chief Operating Officer of Federal Student Aid, U.S. Department of Education, in his official capacity;<br><br>U.S. DEPARTMENT OF EDUCATION;<br><br>*Defendants*. | CIVIL CASE NO. _____<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

Before the ink dried on the Supreme Court's June 30 decision striking down a $430 billion student-loan cancellation program previously announced by the Defendant Department of Education (the "Department),[1] the Department announced a host of equally unlawful loan cancellation schemes.[2] Among these is the cancellation of $39 billion owed to the Treasury by 804,000 student-loan

---

[1] *See Biden v. Nebraska*, 143 S.Ct. 2355 (2023).
[2] The White House, FACT SHEET: President Biden Announces New Actions to Provide Debt Relief and Support for Student Loan Borrowers, June 30, 2023, https://www.whitehouse.gov/briefing-room/statements-releases/2023/06/30/fact-sheet-president-biden-announces-new-actions-to-provide-debt-relief-and-support-for-student-loan-borrowers/ (last visited August 4, 2023).

borrowers starting August 13, 2023, a plan the Department put on an accelerated schedule apparently designed to evade judicial review.[3]

That $39 billion cancellation is part of an even broader plan to wipe out the federal student-loan debt owed by over 3.6 million borrowers. Under a so-called One-Time Account Adjustment, the Department is crediting borrowers with at least three years of "forbearance" from making monthly payments on their loans as qualifying monthly payments needed to earn loan forgiveness under the Public Service Loan Forgiveness (PSLF) and Income-Drive Repayment (IDR) programs. But the PSLF statute is clear that, in addition to working in a public service job for 10 years, a borrower must make "monthly payments" under qualifying repayment plans throughout that 10-year period to receive forgiveness. Statutes governing IDR programs likewise require qualifying "monthly payments" for either 20 or 25 years. No authority allows the Department to count non-payments as payments.

In addition to illegally accelerating PSLF and IDR forgiveness by three years, the "One-Time Account Adjustment" scheme will outright cancel a massive amount of debt owed to the Treasury. By having their loans cancelled three years early, 3.6 million borrowers will each make 36 fewer monthly payments, resulting in the cancellation of 130 million monthly payments. Thus, the $39 billion cancellation of debt for 804,000 borrowers that will occur in August 2023 is just the tip of the iceberg—2.8 million other affected borrowers await similar future cancellation under the same illegal forbearance-credit scheme. Assuming the per-borrower cost of cancellation remains unchanged, the entire scheme will cost taxpayers $175 billion. Despite its massive expense and impact on the legal rights and obligations of millions of borrowers, the Department did not promulgate this policy

---

[3] U.S. Dep't of Educ., Press Release, Biden-Harris Administration to Provide 804,000 Borrowers with $39 Billion in Automatic Loan Forgiveness as a Result of Fixes to Income Driven Repayment Plans, July 14, 2023, https://www.ed.gov/news/press-releases/biden-harris-administration-provide-804000-borrowers-39-billion-automatic-loan-forgiveness-result-fixes-income-driven-repayment-plans (last visited August 4, 2023).

through mandatory notice-and-comment and negotiated rulemaking procedures. Instead, it used a press release that neither identified the policy's legal authority nor considered its exorbitant price tag.

The inescapable conclusion is that the One-Time Account Adjustment is substantively and procedurally unlawful. In granting unearned credits toward loan forgiveness, the Department directly reduces from 10 years to only seven years the incentive for the 3.6 million affected borrowers to participate in the statutory PSLF program by working for public service employers like Plaintiffs while making monthly payments. The Court should declare this forbearance-credit scheme unlawful, set it aside, and enjoin any cancellation of student loans based on it.

## PARTIES

1.      Plaintiff Cato Institute is a § 501(c)(3) organization that is incorporated in Kansas and has its headquarters in Washington, D.C. With 186 employees, Cato regularly competes to recruit and retain talented employees for staff positions, helped by the incentives Congress provided through the PSLF program. *See* Declaration of Peter Goettler (Goettler Decl.) (Attached as Exhibit 1).

2.      Plaintiff Mackinac Center for Public Policy is a § 501(c)(3) organization that is incorporated in Michigan and has its headquarters in Midland, Michigan. With 45 employees, the Mackinac Center regularly competes to recruit and retain college-educated employees for staff positions, helped by the incentives Congress provided through the PSLF program. *See* Declaration of Joseph G. Lehman (Lehman Decl.) (Attached as Exhibit 2).

3.      Defendant U.S. Department of Education is an agency of the United States.

4.      Defendant Miguel Cardona is sued in his official capacity as Secretary of the U.S. Department of Education (Secretary).

5.      Defendant Richard Cordray is sued in his official capacity as Chief Operating Officer of Federal Student Aid of the U.S. Department of Education.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 5 U.S.C. §§ 702 and 703 and 28 U.S.C. §§ 1331, 1361, and 2201.

7.     This Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 702 and 706, 28 U.S.C. §§ 1361 and 2201-2202, and under its inherent equitable powers.

8.     Venue is proper within this district pursuant to 28 U.S.C. § 1391. Defendants are United States agencies or officials sued in their official capacities. Plaintiff Mackinac Center has its principal place of business in this judicial district and substantial parts of the events or omissions giving rise to the Complaint occurred within this district.

## STATEMENT OF FACTS

### I.     LEGAL BACKGROUND

9.     The Department administers student loan programs under Title IV of the Higher Education Act (HEA) of 1965, 20 U.S.C. § 1070 et seq. Outstanding federal student loan debt exceeds $1.6 trillion and is owed by approximately 45 million borrowers.[4]

10.     Under the Federal Direct Loan program, which accounts for most federal student debt, "the federal government makes loans" directly to borrowers "using federal capital (i.e., funds from the U.S. Treasury), and once made, outstanding loans constitute an asset of the federal government."[5]

11.     Congress has authorized several programs that allow Defendants to forgive the unpaid debt owed by certain student-loan borrowers who make qualifying monthly payments on those loans for a certain number of years. These include the PSLF and IDR programs.

---

[4] Alexandra Hegji, Kyle D. Shohfi & Rita R. Zota, Cong. Rsch. Serv., R47196 *Federal Student Loan Debt Cancellation: Policy Considerations* (2022).

[5] *Id.* at 2.

**Public Service Loan Forgiveness Program**

12.     The College Cost Reduction and Access Act of 2007 (CCRA), Pub. L. 110-84, 121 Stat. 784, established the PSLF program. 20 U.S.C. § 1087e(m). Under PSLF, "[t]he Secretary shall cancel the balance of interest and principal due ... on any eligible Federal Direct Loan not in default for a borrower who" meets two statutory qualifications. 20 U.S.C. § 1087e(m).

13.     *First*, the borrower must have "made 120 monthly payments ... pursuant to any one or a combination of [qualifying repayment plans.]" *Ibid.*

14.     *Second*, the borrower must be "employed in a public service job at the time of such forgiveness" and must have been "employed in a public service job during the period in which the borrower made each of the 120 payments." *Ibid.*

15.     Qualifying repayment plans include an IDR plan under either 20 U.S.C. § 1087e(d)(1)(D) or § 1098e, a standard repayment plan under § 1087e(d)(1)(A), or a repayment plan with a monthly payment at least equal to the standard plan. *Ibid.* Additionally, "the borrower must make the monthly payments within 15 days of the scheduled due date for the full scheduled installment amount." 34 C.F.R. § 685.219(c)(1)(iii).

16.     There is no statutory or regulatory provision for non-payments during periods of forbearance to count toward PSLF's requirement of 120 monthly payments. As even late or partial payments under a qualified plan do not count, *ibid.*, non-payments clearly do not count.

17.     A "public service job" means full-time work for a qualified public service employer, which includes nonprofit organizations under § 501(c)(3) of the Internal Revenue Code. 20 U.S.C. § 1087e(m)(1)(B). Plaintiffs qualify as public service employers under PSLF.

18.     PSLF "promotes the interests of public service employers by providing significant financial subsidies to the borrowers they hire on the condition they remain employed in public

service," thereby "increasing recruitment and lowering labor costs" for those employers. *ABA v. Dep't of Educ.*, 370 F. Supp. 3d 1, 19 (D.D.C. 2019).

### Income-Driven Repayment Programs

19.     Direct-loan borrowers have access to four types of IDR plans, each of which caps monthly payments as a percentage of discretionary income and provides for forgiveness of the unpaid balance at the end of the plan's repayment period—either 20 or 25 years, depending on the plan and circumstances.[6]

20.     *First*, the income-*contingent* repayment plan (ICR) was established in 1994 under amendments to the HEA made by the Omnibus Budget Reconciliation Act of 1993. *See* 20 U.S.C. § 1087e(e); 34 C.F.R. § 685.209(b).

21.     ICR caps a borrower's monthly payment at 20 percent of income above the federal poverty line. 34 C.F.R. § 685.209(b)(1). If the loan has not been repaid in full by the end of the 25-year repayment period, the remaining debt is cancelled under § 685.209(b)(3)(iii)(D). To qualify for such cancellation, the borrower must have spent each month of the 25-year period either making "monthly payments" under a qualifying repayment plan or receiving individualized "economic hardship deferment" under 20 U.S.C. § 1085(o). 34 C.F.R. § 685.209(b)(3)(iii); *see also* 20 U.S.C. § 1087e(e)(7).

22.     Qualifying monthly payments for ICR are the same as for PSLF, *i.e.*, an IDR plan, a standard repayment plan, or a repayment plan with a monthly payment at least equal to the standard plan. *Compare* 20 U.S.C. § 1087e(e)(7) *with id.* § 1087e(m)(1)(A). Neither statutory nor regulatory authority exists to count non-payments during periods of forbearance as qualified monthly payments.

---

[6] The Department promulgated a final rule that combines the different IDR programs into a single program with new parameters. *See* Dep't of Educ., *Improving Income Driven Repayment for the William D. Ford Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43,820 (July 10, 2014). But most provisions of that rule do not come into effect until July 1, 2024, and the provisions that have an earlier effectiveness date are not relevant for the claims in this complaint.

23.     Economic hardship deferment under 20 U.S.C. § 1085(o) is available to full-time workers whose incomes do not exceed the greater of the federal minimum wage or 150 percent of the poverty line. The Department's regulations further define "economic hardship" to include borrowers who receive means-tested public assistance or work for the Peace Corps. 34 C.F.R. § 685.204(g)(2). A borrower may not receive more than three years of economic hardship deferment. 20 U.S.C. § 1087e(f)(D).[7] Non-payments during periods of forbearance from payment do not count toward the three-year limit on "economic hardship deferment."

24.     *Second*, the income-based repayment plan (IBR) was established in 2008 under provisions of the 2007 CCRA. 20 U.S.C. § 1098e. The Health Care and Education Reconciliation Act of 2010 (HCERA) extended more generous terms to IBR participants with loans after July 2014. *Id.* § 1098e(e).

25.     IBR caps a "borrower's aggregate monthly loan payments … to no more than 15 percent, or for a [post-July 2014] borrower, 10 percent of the amount by which the borrower's [annual income] exceeds 150 percent of the poverty guideline applicable to the borrower's family size, divided by 12." 34 C.F.R. § 685.221(b)(1).

26.     IBR participants may "qualify for loan forgiveness after 25 years or, for a [post-July 2014] borrower, after 20 years." *Id.* § 685.221(f)(1). But they must have spent each month of the 20- or 25-year period either making "monthly payments" under a qualifying repayment plan or receiving "economic hardship deferments" under 20 U.S.C. § 1085(o). *Ibid.*

27.     Qualifying repayment plans for IBR are the same as for PSLF, *i.e.*, an IDR plan, a standard repayment plan, or a repayment plan with a monthly payment at least equal to the standard plan. *Compare* 20 U.S.C. § 1098e(b)(7) *with* § 1087e(m)(1)(A).

---

[7] The HEA recognizes other types of deferment, including for study, unemployment, and military service. 20 U.S.C. § 1087e(f)(A)-(C). But these other types of deferment do not count toward ICR's forgiveness period.

28.      *Third*, the Pay As You Earn (PAYE) plan was established in 2012 under the 1993 ICR provisions. *See* 34 U.S.C. § 685.209(a). PAYE caps monthly payment to 10 percent of income above 150 percent of the poverty line and provides for forgiveness after 20 years. *Id.* § 685. 209(a)(2), (a)(6). PAYE participants qualify for forgiveness if they spent each month of the 20-year period either making "monthly payments" under a qualifying repayment plan or receiving "economic hardship deferment" under 20 U.S.C. § 1085(o). *Id.* § 685.209(a)(6).

29.      Qualifying monthly payments for PAYE are the same as for PSLF, *i.e.*, an IDR plan, a standard repayment plan, or a repayment plan with a monthly payment at least equal to the standard plan. *Compare* 20 U.S.C. § 1087e(e)(7) *with id.* § 1087e(m)(1)(A).

30.      *Fourth*, the Revised Pay As You Earn (REPAYE) plan was established in 2015 under the 1993 ICR provisions. 34 C.F.R. § 685.209(c). REPAYE caps monthly payments to "10 percent of the amount by which the borrower's [annual income] exceeds 150 percent of the poverty guideline applicable to the borrower's family size, divided by 12." *Id.* § 685.209(c)(2)(i).

31.      REPAYE participants qualify for loan forgiveness after 20 years if all loans are for undergraduate study, or after 25 years if some loans are for graduate or professional study. *Id.* § 685.209(c)(5). To obtain forgiveness, REPAYE participants must have spent each month of the 20- or 25-year period either making "monthly payments" under a qualifying repayment plan or receiving "economic hardship deferment" under 20 U.S.C. § 1085(o). *Ibid.*

32.      Qualifying monthly payments for REPAYE are the same as for PSLF, *i.e.*, an IDR plan, a standard repayment plan, or a repayment plan with a monthly payment at least equal to the standard plan. *Compare* 20 U.S.C. § 1087e(e)(7) *with id.* § 1087e(m)(1)(A).

33.      In sum, to receive cancellation of loans under any of the IDR plans that existed in April 2022 (including ICR, IBR, PAYE, and REPAYE), a borrower must spend a prescribed period— 20 or 25 years, depending on the plan—either making "monthly payments" under a qualifying

repayment plan or receiving "economic hardship deferment" as defined by 20 U.S.C. § 1085(o). 34 C.F.R. §§ 685.209(a)(6) (PAYE); 685.209(b)(3)(iii) (ICR); 685.209(c)(5) (REPAYE); 685.221(f) (IBR).

## II. DEFENDANTS CREDIT FORBEARANCE TOWARD IDR AND PSLF FORGIVENESS

34.     Forbearance under the HEA means "permitting the temporary cessation of payments, allowing an extension of time for making payments, or temporarily accepting smaller payments than previously scheduled." 34 C.F.R. §§ 682.211(a)(1), 685.205(a). Forbearance may be granted by either a loan servicer or the Secretary under circumstances specified by the Department's regulations. *Ibid.*

35.     There is no statutory or regulatory authority to count non-payments during periods of forbearance as qualifying monthly payments for PSLF or IDR.

36.     Nor do periods of forbearance count as "economic hardship deferment." To start, forbearance can be granted by either the Secretary or a servicer, whereas only the Secretary may grant economic hardship deferment. *See* 20 U.S.C. § 1087(f)(2)(D). Forbearance and economic hardship deferment have different eligibility requirements. *Compare* 34 C.F.R. §§ 682.211(a)(1) and 685.205(a) *with id.* § 685.204(g)(2). Whereas economic hardship deferment is capped at three years, forbearance can be renewed indefinitely so long as the requesting borrower meets the regulatory conditions, *compare id.* § 685.205(c)(2) *with* § 685.204(g)(1).

37.     Nonetheless, on April 19, 2022, the Department announced in a press release that it would make a One-Time Account Adjustment in order to credit periods of long-term forbearance toward PSLF's 10-year monthly-payment requirement and toward IDR's 20- or 25-year payment-or-deferment requirement.[8]

---

[8] U.S. Dep't of Educ. Press Release, Department of Education Announces Actions to Fix Longstanding Failures in Student Loan Programs, Apr. 19, 2022, https://www.ed.gov/news/press-releases/department-education-announces-actions-fix-longstanding-failures-student-loan-programs (last visited July 26, 2023).

38.     According to the press release, the One-Time Account Adjustment "result[ed] in immediate debt cancellation for at least 40,000 borrowers" under PSLF, and "[m]ore than 3.6 million borrowers … receive[d] at least three years of additional credit toward IDR forgiveness."[9]

39.     The IDR credits alone are equivalent to cancelling debt equal to 3 years' worth of payments per affected borrower. Each of the 3.6 million affected borrowers will make three fewer years of payments (36 monthly payments) before his or her debt is cancelled under IDR. The One-Time Account Adjustment thus costs the Treasury at least 130 million forgone monthly payments without even considering the cost of accelerated forgiveness under PSLF. The Department did not estimate the cost to taxpayers of providing such a cancellation. Or, if it did conduct an internal estimation, the press release did not announce the results of that analysis.

40.     Defendants' April 2022 press release claimed the One-Time Account Adjustment addressed "inappropriate steering into long-term forbearance" by loan servicers.[10] But it neither defined inappropriate steering nor estimated how many borrowers were steered inappropriately. It instead granted forbearance credits to *all* borrowers who experienced long-term forbearance—including those whose forbearance was granted by the Secretary of Education—without regard for whether they were steered inappropriately by a loan servicer.

41.     The Department did not cite any legal authority for making this Adjustment.

42.     On July 14, 2023, the Department announced that it will cancel $39 billion of student-loan debt owed by 804,000 borrowers under IDR plans—approximately $50,000 per borrower.[11] The Department confirmed this cancellation "is part of the Biden-Harris Administration's implementation of the [one-time] payment [ac]count adjustment announced in April 2022."[12]

---

[9] *Id.*
[10] *Id.*
[11] *Supra* at note 3.
[12] *Id.*

43.     The 804,000 "borrowers will be informed by the Department starting [July 14] that they qualify for forgiveness without further action on their part. Discharges will begin 30 days after emails are sent."[13]  Thus, unauthorized cancellation of $39 billion in student-loan debt owed to the Treasury will start on August 13, 2023.

III.    **INJURY TO PLAINTIFFS AND OTHER PUBLIC SERVICE EMPLOYERS**

44.     The One-Time Account Adjustment injures Plaintiffs and other public service employers by reducing PSLF incentives that benefit such employers in the competition to hire and retain college-educated workers. *ABA*, 370 F. Supp. 3d at 19 (finding Article III injury based on employer's loss of PSLF incentives).

<u>**Plaintiffs Benefit from PSLF Incentives**</u>

45.     Plaintiffs are nonprofit organizations under § 501(c)(3) of the Internal Revenue Code, Goettler Decl. ¶ 4; Lehman Decl. ¶ 4, and are therefore qualified employers for the statutory PSLF program, *see* 34 C.F.R. § 685.219(b).

46.     Plaintiffs compete in the labor market to recruit and retain college-educated employees for staff positions. The incentives Congress provided through the statutory PSLF program have helped Plaintiffs recruit and retain such employees. Goettler Decl. ¶¶ 9-10; Lehman Decl. ¶¶ 9-10.

47.     Plaintiffs have previously employed, and currently employ, borrowers who participate, may become eligible to participate, or have previously participated in the statutory PSLF program. Plaintiffs further expect to recruit other such employees in the future with the help of the incentives Congress provided them through PSLF. Goettler Decl. ¶¶ 9-10; Lehman Decl. ¶¶ 9-10.

---

[13] *Id.*

48.     Under PSLF, a borrower will have the balance of his or her federal direct loan debt forgiven after making 10 years' worth of qualified payments while working full-time at a qualifying employer. 34 C.F.R. § 685.219(c).

49.     Qualifying employers include government agencies, § 501(c)(3) nonprofit entities, and other nonprofit entities that provide certain services. *Id.* § 685.219(b).

50.     PSLF subsidizes qualifying employers' staff-compensation costs by providing an incentive for borrower-employees to seek and maintain employment with such employers rather than employment with non-qualifying employers. *ABA*, 370 F. Supp. 3d at 19.

51.     All else being equal, this incentive materially helps qualifying employers attract and retain borrower-employees who might otherwise choose higher-paying employment with non-qualifying employers in the private sector. *Ibid.*

52.     Qualifying employers, including Plaintiffs, benefit from the PSLF subsidy to borrowers because at a given salary level the total effective compensation to the borrower-employee is higher than otherwise due to the value of the prospective loan forgiveness. This provides a cost advantage to PSLF-eligible employers when competing for talent against non-PSLF-eligible employers. Indeed, creating that deliberate advantage is the main point of the program.

53.     The greater the outstanding debt the borrower-employee owes—and thus the amount that will be forgiven under PSLF—the higher his or her effective subsidy is under PSLF.

54.     Unlawful cancellation of student-loan debt reduces the amount of a borrower's PSLF-cancellable debt and thus reduces the amount by which PSLF benefits qualified employment.

### Crediting Forbearance Toward PSLF Reduces Benefits to PSLF Employers

55.     A month counts toward the 120-month requirement for PSLF forgiveness only if the borrower both (1) works at a public service employer during that month and (2) makes a qualifying monthly payment. 20 U.S.C. § 1087e(m)(1). So, the PSLF program designed by Congress envisions

debt forgiveness only in exchange for making monthly payments while working at a public service employer.

56.     By counting non-payments during periods of forbearance toward the 120 months of payments PSLF loan forgiveness requires, the Department shortens by 36 months the period affected PSLF debtors otherwise must work for a public service employer in order to have their loans forgiven.

57.     The period for which PSLF incentivizes these borrowers to work at public service employers like Plaintiffs is thus shortened by 30 percent—the amount of forbearance credited as "monthly payments" under the One-Time Account Adjustment.

58.     Instead of ten years, an affected borrower who receives three years of forbearance credit is incentivized to work for a public service employer while making monthly payments for only seven years. This unlawful reduction in the PSLF service requirement injures public service employers that rely on PSLF to recruit and retain college-educated employees.

59.     Additionally, the One-Time Account Adjustment immediately cancelled the entire student-loan debt of at least 40,000 borrowers by allowing them to count non-payments during periods of forbearance as monthly payments required by PSLF.

60.     But for the One-Time Account Adjustment, these 40,000 borrowers would have a strong financial incentive under PSLF to seek and maintain employment with public service employers like Plaintiffs for the entire 10-year statutory PSLF term. Reducing that financial incentive to seven years through administrative fiat unlawfully deprives such employers of the full statutory benefit to which they are entitled under PSLF.

## Crediting Forbearance Toward IDR Reduces PSLF Benefits

61.     Borrowers can simultaneously participate in IDR and PSLF, so they can have monthly payments capped by one of the IDR plans and have their debt forgiven after working only 10 years in

public service jobs—as opposed to 20 or 25 years under IDR—provided that they make all 120 PSLF-qualifying monthly payments. 20 U.S.C. § 1087e(m).

62.    In addition to being faster, forgiveness under PSLF requires a borrower to make 120 fewer monthly payments compared to forgiveness under a 20-year IDR plan and 180 fewer monthly payments compared to a 25-year IDR plan. Fewer monthly payments provide a significant financial incentive to work for public service employers like Plaintiffs instead of waiting for IDR forgiveness.

63.    Under the One-Time Account Adjustment, "[m]ore than 3.6 million borrowers … receive at least three years of additional credit toward IDR forgiveness," by having periods of forbearance count toward IDR's 20-year or 25-year requirements. These affected IDR borrowers did not receive forbearance credited toward PSLF because, presumably, they were not working for a public service employer during their periods of forbearance.[14]

64.    For these 3.6 million borrowers, the Department has effectively reduced the 20-year monthly-payment requirement for post-July 2014 IBR participants, PAYE participants, and REPAYE participants with only undergraduate loans to only 17 years. And it has reduced the 25-year monthly-payment requirement for ICR participants, pre-July 2014 IBR participants, and REPAYE participants to only 22 years.

65.    In doing so, the Department made loan cancellation under IDR comparatively more attractive than forgiveness under PSLF. For affected borrowers enrolled in a 20-year IDR plan, instead of receiving forgiveness 10 years faster under PSLF, they receive forgiveness only 7 years faster.[15]  And instead of saving 120 monthly payments under PSLF, they save only 84 monthly payments, as compared to IDR.

---

[14] A qualifying monthly payment counts toward PSLF only if it was made while the borrower was working for a public service employer. 20 U.S.C. § 1087e(m)(1)(B).

[15] The Department did not grant the 3.6 million affected IDR borrowers forbearance credits toward PSLF's 10-year payment-and-service requirement. Presumably, this is because these affected borrowers were not employed at a public service employer during their periods of forbearance.

66.     For borrowers enrolled in a 25-year IDR plan, instead of receiving forgiveness 15 years faster under PSLF, they receive forgiveness only 12 years faster. And instead of saving 180 monthly payments under PSLF, they save only 144 monthly payments, as compared to IDR.

67.     In both cases, the advantage of PSLF forgiveness over IDR forgiveness in terms of speed is reduced by three years. And the advantage of PSLF forgiveness over IDR forgiveness in terms of financial value is reduced by 36 monthly payments.

68.     The incentive for the 3.6 million borrowers affected by the One-Time Account Adjustment to seek PSLF forgiveness by working for a public service employer is thus reduced.

69.     For the 804,000 borrowers whose total debt of $39 billion will be cancelled starting on August 13, their incentive to seek PSLF forgiveness by working for a public service employer is eliminated entirely.

70.     This disincentive to participate in PSLF injures public service employers, including Plaintiffs, that depend on PSLF incentives to recruit and retain college-educated employees.

## CLAIMS FOR RELIEF

### Count I: Violation of the Appropriations Clause in Article I § 9 of the U.S. Constitution

71.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

72.     Article I, § 9, of the Constitution provides: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." This Clause is intended "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *OPM v. Richmond*, 496 U.S. 414, 428 (1990). Accordingly, "no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Id.* at 424 (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)).

73.     Debt instruments held by the United States count as "Money" that shall not be drawn without Congressional appropriation. Cancelling such debt is an appropriation that must be authorized by Congress.

74.     Congress statutorily required PSLF debtors to make 120 qualifying monthly loan payments in order to qualify for loan forgiveness under the program.  Congress did not authorize canceling the outstanding loan balances of PSLF debtors who make fewer than 120 qualifying monthly payments. 20 U.S.C. § 1087e(m).

75.     Nor did Congress authorize canceling the debt of borrowers who did not make qualifying monthly payments (or were in economic hardship deferment) during the 20-or-25-year repayment period of an IDR plan.

76.     Crediting forbearance as qualifying "monthly payments" for the purpose of PSLF and IDR forgiveness results in cancellation of debt that Congress did not authorize, in violation of the Appropriations Clause.

77.     This unauthorized cancellation of debt includes the Department's plan to cancel $39 billion in loans owed by 804,000 borrowers starting August 13, 2023.

### Count II: Violation of the Administrative Procedure Act—Exceeding Statutory Authority

78.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

79.     The Department is an agency subject to the requirements of the Administrative Procedure Act (APA). *See* 5. U.S.C. § 551(1).

80.     The One-Time Account Adjustment to PSLF and IDR programs is a final agency action that is subject to judicial review under the APA.

81.     Under the APA, a court must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2).

82.     "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Thus, "an agency literally has no power to act … unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

83.     There is no statutory authority to credit non-payments during periods of loan forbearance toward the 120-monthly-payment requirement for debt forgiveness under PSLF. 20 U.S.C. § 1087e(m). Rather, only monthly payments under a qualifying repayment plan count. *Ibid.*

84.     Because the One-Time Account Adjustment purports to credit non-payments during periods of forbearance toward PSLF's monthly-payment requirement, it exceeds Defendants' statutory authority and should be set aside and enjoined.

85.     There is no statutory authority to credit non-payments during periods of forbearance toward the repayment period needed for debt forgiveness under IBR. 20 U.S.C. § 1098e(b)(7). Rather, only "monthly payments" under a qualifying repayment plan or "deferment due to economic hardship" count. *Ibid.*

86.     There is no statutory authority to credit non-payments during periods of forbearance toward the "period of time for which an income contingent repayment plan … may be in effect." 20 U.S.C. § 1087e(e)(7). Rather, only "monthly payments" under a qualifying repayment plan or "deferment due to economic hardship" may count. *Ibid.*

87.     Because the One-Time Account Adjustment purports to credit non-payments during periods of forbearance toward the repayment period of IDR plans (both IBR and ICR), it exceeds Defendants' statutory authority and should be set aside and enjoined.

88.    The Department's plan to cancel $39 billion in debt owed by 804,000 borrowers starting August 13, 2023, based on the One-Time Account Adjustment, is not authorized by statute and thus must be enjoined (or set aside after the fact).

### Count III: Violation of the APA—Arbitrary and Capricious Agency Action

89.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

90.    Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

91.    Agency action is arbitrary and capricious if the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up).

92.    A departure from prior policy is arbitrary and capricious unless the agency "assess[es] whether there were reliance interests [in that prior policy], determine whether they were significant, and weigh any such interests against competing policy concerns." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020).

93.    Defendants have failed to explain why it has changed its policy from not crediting non-payments during periods of loan forbearance to crediting such payments for purposes of PSLF and IDR forgiveness. They likewise did not identify legal authority for such a change. Nor did they consider the reliance interests of public service employers in receiving full benefits from PSLF.

94.    Agency action is also arbitrary and capricious if the agency failed to consider costs and benefits. *State Farm*, 463 U.S. at 54-55; *cf. Michigan v. EPA*, 576 U.S. 743, 752 (2016) ("One would not

say that it is even rational, never mind 'appropriate,' to impose billions of dollars in economic costs in return for a few dollars in … benefits.").

95.     Defendants have entirely failed to consider the cost to taxpayers of crediting periods of forbearance toward PSLF and IDR forgiveness.

96.     Granting 3.6 million borrowers with three years' credit toward IDR forgiveness means those borrowers will make approximately 130 million fewer monthly payments to the Treasury than they otherwise would before having their debt completely cancelled. Defendants did not even attempt to estimate this cost, let alone weigh costs and benefits.

97.     Nor did Defendants consider the financial cost of accelerating PSLF forgiveness—including immediately cancelling the loans of over 40,000 borrowers.

98.     Defendants also failed to consider non-financial costs in terms of fundamental fairness. They did not consider, for example, why certain college graduates who took on student debt obligations voluntarily should be excused from making at least 130 million monthly payments on their outstanding student loans when their non-college-educated peers receive no comparable benefit yet face, on average, greater economic challenges. Congress is empowered to legislate such unfairness if it so chooses under most circumstances, but federal agencies do not enjoy the same latitude.

99.     By crediting non-payments during periods of loan forbearance as payments toward PSLF and IDR loan forgiveness, the One-Time Account Adjustment is arbitrary and capricious and should be set aside and enjoined.

**Count IV: Violation of the APA—Failure to Observe Procedure Required by Law**

100.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

101.     Under the APA, courts must "hold unlawful and set aside agency action" that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

102.    The APA requires administrative agencies to undertake notice-and-comment rulemaking when engaging in substantive decision-making. *Id.* § 533.

103.    Under notice-and-comment procedures: (1) "the agency must issue a '[g]eneral notice of proposed rule making,' ordinarily by publication in the Federal Register"; (2) "the agency must 'give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments'"; and (3) "it must include in the rule's text 'a concise general statement of [its] basis and purpose.'" *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (alterations in original) (quoting 5 U.S.C. § 533). The APA also requires "publication … of a substantive rule [to] be made not less than 30 days before its effective date." 5 U.S.C. § 553(d).

104.    Additionally, the HEA requires Defendants to follow negotiated rulemaking procedures to "obtain the advice of and recommendations from individuals and representatives of the groups involved in student financial assistance programs" when developing regulations that affect federal student assistance. 20 U.S.C. § 1098a(a)(1).

105.    The One-Time Account Adjustment affects the legal rights of at least 3.6 million individual borrowers. It will cost taxpayers at least $39 billion to cancel the debt owed to the Treasury by 804,000 of those borrowers, and the cost will only rise as the remaining 2.8 million affected borrowers have their debt cancelled because of that agency action.

106.    The One-Time Account Adjustment is indisputably a substantive final agency action that requires Defendants to follow notice-and-comment and negotiated rulemaking procedures. The Department instead issued it as a press release, making a mockery of proper administrative procedure.

107.    Defendants failed to observe procedures required by law and therefore the One-Time Account Adjustment should be set aside and enjoined.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs respectfully request this Court to declare Defendants' One-Time Account Adjustment to be unlawful, to enjoin its implementation, and to set it aside. Specifically, Plaintiffs request this Court to find Defendants have committed the violations alleged and described above, and to enter the following:

A. A declaratory judgment that Defendants' One-Time Account Adjustment announced on April 19, 2022, violates the Appropriations Clause of the Constitution;

B. A declaratory judgment that Defendants' One-Time Account Adjustment is not authorized by the HEA or any other statute;

C. A declaratory judgment that the One-Time Account Adjustment violates the APA;

D. A judgment setting aside the One-Time Account Adjustment;

E. An injunction requiring Defendants to stop crediting non-payments during periods of loan forbearance as monthly payments under PSLF, and to stop cancelling debt under PSLF for student-loan debtors who have made qualifying payments while working for a public service employer for less than 10 years, where such cancellation is not authorized by statute;

F. An injunction requiring Defendants to stop crediting non-payments during periods of loan forbearance as monthly payments (or economic hardship deferment) under IDR, and to stop cancelling debt under IDR where such cancellation is not authorized by statute;

G. An injunction to stop Defendants from cancelling $39 billion in debt that is not authorized by statute;

H. An order setting aside the cancellation of $39 billion in debt to the extent such cancellation occurs before an injunction could issue;

I. An award of attorneys' fees and costs;

J. Any other relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs demand a trial by jury of any triable issues.

August 04, 2023                                         Respectfully submitted,

                                                        /s/ Sheng Li
                                                        _____
                                                        SHENG LI (D.C. BAR NO. 90001962)
                                                        Litigation Counsel
                                                        RUSSELL G. RYAN
                                                        Senior Litigation Counsel
                                                        NEW CIVIL LIBERTIES ALLIANCE
                                                        1225 19th Street NW, Suite 450
                                                        Washington, DC 20036
                                                        (202) 869-5210
                                                        Sheng.Li@ncla.legal