**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

**Northern Division**

CATO INSTITUTE

and

MACKINAC CENTER FOR PUBLIC POLICY

*Plaintiffs*,

v.

MIGUEL CARDONA, Secretary, U.S. Department
of Education, in his official capacity;

RICHARD CORDRAY, Chief Operating Officer of
Federal Student Aid, U.S. Department of Education,
in his official capacity;

U.S. DEPARTMENT OF EDUCATION;

*Defendants*.

CASE NO. 1:23-cv-11906-TLL-PTM

**PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs Cato Institute and Mackinac Center for Public Policy respectfully moves this Court

for a temporary restraining order (TRO) and preliminary injunction to prevent Defendants

implementing the One-Time Account Adjustment, including the cancellation of $39 billion in federal

student-loan debt that is scheduled to start on August 13, 2023. In support of this motion, Plaintiff

relies on its Complaint filed in this action, the Declarations of Peter Goettler and Joseph Lehman

attached as Exhibits to the Complaint, and the accompanying memorandum of law.

Plaintiff respectfully requests that the TRO be issued forthwith to halt the cancellation of any student-loan debt and that it remains in place until the Court rules on Plaintiffs' motion for preliminary injunction. Plaintiffs further request that the Court set expedited briefing and consideration of its motion for a preliminary injunction. Plaintiffs are available for a TRO hearing—should the Court find such a hearing helpful—during the week of August 7, 2023.

Plaintiffs were unable to serve Defendants with the Complaint on August 4, 2023, because the clerk's office was closed. Plaintiffs emailed Defendants' counsel with a courtesy copy of the Complaint on August 4, 2023, and promptly hired a process server to serve the Complaint after the clerk's office issued summons on August 7, 2023. Pursuant to Local Rules 7.1 and 65.1, there was a telephonic conference on August 7, 2023, in which counsel for Plaintiffs explained the nature of the motion and its legal basis to counsel for Defendants and requested but did not obtain concurrence in the relief sought. Defendants oppose Plaintiffs' motion and note that Defendants have not been served with Plaintiffs' Complaint, as required by FRCP 4(i). Plaintiffs emailed a courtesy copy of this motion and the attached memorandum to counsel for Defendants on August 7, 2023.

August 07, 2023                                  Respectfully submitted,

                                                 /s/ Sheng Li
                                                 SHENG LI
                                                 Litigation Counsel
                                                 RUSSELL G. RYAN
                                                 Senior Litigation Counsel
                                                 NEW CIVIL LIBERTIES ALLIANCE
                                                 1225 19th Street NW, Suite 450
                                                 Washington, DC 20036
                                                 (202) 869-5210
                                                 Sheng.Li@ncla.legal

## CERTIFICATE OF SERVICE

I hereby certify that, on August 7, 2023, I caused the service of this motion and the attached memorandum of law to be delivered by certified mail to the following Defendants:

> Dr. Miguel Cardona
> Secretary of Education
> U.S. Department of Education
> 400 Maryland Ave, SW
> Washington, DC 20202

> Richard Cordray
> U.S. Department of Education
> 400 Maryland Ave, SW
> Washington, DC 20202

> U.S. Department of Education
> 400 Maryland Ave, SW
> Washington, DC 20202

> Hon. Merrick Garland
> US Attorney General
> US Department of Justice
> 950 Pennsylvania Ave NW
> Washington, DC 20530

I further certified that, on August 7, 2023, I caused hand service of this motion and the attached memorandum of law to be delivered by process server on the United States Attorney for the Eastern District of Michigan at the following address:

> Dawn N. Ison, United States Attorney
> Eastern District of Michigan
> 211 W. Fort Street, Suite 2001
> Detroit, MI 48226

I further certified that, on August 7, 2023, I emailed the motion and the attached memorandum of law to counsel for Defendants at kate.talmor@usdoj.gov and cynthia.f.liao@usdoj.gov.

/s/ Sheng Li
Sheng Li

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

**Northern Division**

| | |
|---|---|
| CATO INSTITUTE<br><br>and<br><br>MACKINAC CENTER FOR PUBLIC POLICY,<br><br>*Plaintiffs*,<br><br>v.<br><br>MIGUEL CARDONA, Secretary, U.S. Department of Education, in his official capacity;<br><br>RICHARD CORDRAY, Chief Operating Officer of Federal Student Aid, U.S. Department of Education, in his official capacity;<br><br>U.S. DEPARTMENT OF EDUCATION;<br><br>*Defendants.* | CASE NO. 1:23-cv-11906-TLL-PTM |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

## ISSUES PRESENTED

1.  Whether the Department of Education has authority to enact a student loan debt forgiveness program that counts non-payments during periods of forbearance as "monthly payments" under qualifying repayment plans for the purposes of the Public Service Loan Forgiveness and Income-Driven Repayment programs.

2.  If yes, whether the Department of Education followed the requirements of the Administrative Procedure Act in enacting the challenged debt-relief program.

3.  Whether a temporary restraining order or preliminary injunctive relief is appropriate to halt the Department of Education's unlawful debt-relief program.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Biden v. Nebraska*, 143 S. Ct. 2355 (2023)

*Clinton v. City of New York*, 524 U.S. 417 (1998)

*Chrysler Corp. v. Brown*, 441 U.S. 281, 301 (1979)

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)

## TABLE OF CONTENTS

ISSUES PRESENTED ................................................................................................. ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...................................... iii

TABLE OF CONTENTS ............................................................................................. iv

TABLE OF AUTHORITIES ......................................................................................... v

INTRODUCTION ....................................................................................................... 1

RELEVANT FACTS ................................................................................................... 2

    I.    LEGAL BACKGROUND ................................................................................. 2

        A.    The PSLF Program ......................................................................... 3

        B.    The IDR Programs .......................................................................... 4

    II.    DEFENDANTS CREDIT FORBEARANCE TOWARD IDR AND PSLF FORGIVENESS ............... 5

PLAINTIFFS' STANDING .......................................................................................... 7

    I.    PLAINTIFFS HAVE STANDING BASED ON INJURY TO THEIR PROCEDURAL RIGHT OF NOTICE AND COMMENT ...................................... 7

    II.    PLAINTIFFS HAVE STANDING BECAUSE THE ONE-TIME ACCOUNT ADJUSTMENT INFLICTS A COMPETITIVE INJURY ....................... 9

ARGUMENT ............................................................................................................. 13

    I.    PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS ...................................... 13

        A.    Defendants Lack Statutory Authority to Count Forbearance as Monthly Payments for the PSLF and IDR Programs ......................... 13

            1.    The Major Questions Doctrine Requires Clear Congressional Authorization for the One-Time Account Adjustment ................................ 13

            2.    The Plain Text of PSLF and IDR Provisions Forbids the One-Time Adjustment .... 14

        B.    The Department Failed to Follow Procedures Required by Law ................. 16

        C.    The One-Time Account Adjustment Is Arbitrary and Capricious .............. 17

    II.    IMMEDIATE INJUNCTIVE RELIEF IS WARRANTED ............................................. 18

    III.    THE SCOPE OF THE TRO OR INJUNCTION MUST BE NATIONWIDE ................... 20

CONCLUSION ......................................................................................................... 20

CERTIFICATE OF SERVICE .................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABA v. U.S. Dep't of Educ.*,
370 F. Supp. 3d 1 (D.D.C. 2019) ................................................................ 8, 10

*Adams v. Watson*,
10 F.3d 915 (1st Cir. 1993) .......................................................................... 9, 12

*Basicomputer Corp. v. Scott*,
973 F.2d 507 (6th Cir. 1992) ............................................................................ 19

*Biden v. Nebraska*,
143 S. Ct. 2355 (2023) ...................................................................................... 13

*Can. Lumber Trade All. v. United States*,
517 F.3d 1319 (Fed. Cir. 2008) .......................................................................... 9

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) ................................................................................... iii, 17

*Clinton v. City of New York*,
524 U.S. 417 (1998) ...................................................................................... 9, 14

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
140 S. Ct. 1009 (2020) ....................................................................................... 12

*Commonwealth v. Biden*,
57 F.4th 545 (6th Cir. 2023) .............................................................................. 19

*DHS v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020) ....................................................................................... 18

*Dismas Charities, Inc. v. U.S. Dep't of Just.*,
401 F.3d 666 (6th Cir. 2005) ............................................................................... 9

*Faust v. Vilsack*,
519 F. Supp. 3d 470 (E.D. Wis. 2021) ......................................................... 19, 20

*FEC v. Cruz*,
142 S. Ct. 1638 (2022) ........................................................................................ 7

*Hyland v. Navient, Corp.*,
No. 18CV9031(DLC), 2019 WL 2918238 (S.D.N.Y. July 8, 2019) ................... 15

*In re Glob. Indus. Techs., Inc.*,
645 F.3d 201 (3d Cir. 2011) ................................................................................. 9

*Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United States*,
617 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) ...................................................... 14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ...................................................................................... 7, 12

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) ............................................................................ 8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ............................................................................ 17

*Motorcars, LLC v. Navarro,*
   579 U.S. 211 (2016) ............................................................................ 18

*Obama for Am. v. Husted,*
   697 F.3d 423 (6th Cir. 2012) ............................................................ 18

*Perez v. Mortg. Bankers Ass'n,*
   575 U.S. 92 (2015) ............................................................................ 16

*Sherley v. Sebelius,*
   610 F.3d 69 (D.C. Cir. 2010) ............................................................ 9

*Sw. Penn. Growth All. v. Browner,*
   144 F.3d 984 (6th Cir. 1998) ........................................................ 9, 10

*Texas v. EEOC,*
   933 F.3d 433 (2019) ............................................................................ 7

*United States v. Students Challenging Regul. Agency Procs.,*
   412 U.S. 669 (1973) ............................................................................ 12

*Weingarten v. Devo,*
   468 F. Supp. 3d 322 (D.D.C. 2020) ................................................ 15

*Wilson v. Gordon,*
   822 F.3d 934 (6th Cir. 2016) ............................................................ 13

*Wilson v. Williams,*
   961 F.3d 829 (6th Cir. 2020) ........................................................ 13, 19

*Wynn v. Vilsack,*
   545 F. Supp. 3d 1271 (M.D. Fla. 2021) .......................................... 20

**Statutes**

20 U.S.C. § 1087 ......................................................................................Passim

20 U.S.C. § 1098 ......................................................................................Passim

5 U.S.C. § 553 ...................................................................................... 9, 19

5 U.S.C. § 706 ................................................................................ 15, 19, 20

College Cost Reduction and Access Act of 2007,
   Pub. L. 110-84, 121 Stat. 784 ............................................................ 3

Consolidated Appropriations Act of 2018,
   Pub. L. No. 115-141, 132 Stat. 424 .................................................. 17

Omnibus Budget Reconciliation Act of 1993,
   Pub. L. 103-66, 107 Stat. 312 ............................................................ 4

**Other Authorities**

Alexandra Hegji, Kyle D. Shohfi & Rita R. Zota, Cong. Rsch. Serv., R47196 *Federal Student Loan Debt Cancellation: Policy Considerations* (2022) .............................................................................................. 3

U.S. Dep't of Educ. Press Release, Department of Education Announces Actions to Fix Longstanding Failures in Student Loan Programs, Apr. 19, 2022 ................................................ 6

U.S. Dep't of Educ., Press Release, Bide Biden-Harris Administration to Provide 804,000 Borrowers with $39 Billion in Automatic Loan Forgiveness as a Result of Fixes to Income Driven Repayment Plans, July 14, 2023 ...................................................................................................... 7

**Regulations**

34 C.F.R. § 682.211 ................................................................................................................... 6, 18

34 C.F.R. § 685.205 ................................................................................................................... 6, 18

34 C.F.R. § 685.209 ................................................................................................................. Passim

34 C.F.R. § 685.210 ................................................................................................................... 6, 19

34 C.F.R. § 685.219 ................................................................................................................... 4, 20

34 C.F.R. § 685.221 ................................................................................................................... 5, 20

# INTRODUCTION

Plaintiffs Cato Institute and the Mackinac Center for Public Policy respectfully move for a temporary restraining order (TRO) and a preliminary injunction to halt the ongoing effort by Defendant Department of Education (Department) to unlawfully cancel billions of dollars of federal student-loan debt through a "One-Time Account Adjustment." Unless stopped, this Adjustment will unlawfully cancel $39 billion in student-loan debt owed to the Treasury on August 13, 2023, with over $100 billion more to follow.

In April 2022, the Department announced the One-Time Account Adjustment to credit years of forbearance toward the monthly-payment requirements for loan cancellation under the Public Service Loan Forgiveness (PSLF) and Income-Driven Repayment (IDR) programs. But the PSLF statute is clear that a borrower must make 120 "monthly payments" pursuant to qualifying repayment plans to receive loan cancellation. Forgiveness under the IDR statutes similarly require a combination of either "monthly payments" under qualifying repayment plans or "economic hardship deferment"—a narrow category that does not include forbearance—over a 20- or 25-year repayment period. Neither PSLF nor IDR allows forbearance to count toward their respective forgiveness periods.

Congress has not—and would not—approve such a drastic alteration to PSLF's and IDR's statutory schemes, which is precisely why the Department is proceeding through administrative fiat. Statutes enacted through the constitutional lawmaking process of bicameralism and presentment arrive in federal court with a presumption of constitutionality attached to them, because two other branches of government have already (at least implicitly) passed on those laws' constitutionality. However, the same cannot be said of single-branch rulemaking—especially single-branch rulemaking that itself fails to comport with rulemaking requirements. Such rules do not arrive in federal court with a presumption of constitutionality—certainly mere agency press releases do not—so this court need not accord them similar respect. Rather, this court should not hesitate to do its judicial duty, protect

Congress's prerogative to make and amend statutes, and stop the lawless administrative statutory rewrite that Defendants are attempting here.

Crediting non-payments during periods of forbearance as "monthly payments" under PSLF and IDR is therefore unlawful and any cancellation of student-loan debt because of such forbearance credits is likewise unlawful. The Adjustment credited at least 36 months of forbearance as qualifying monthly payments to each of 3.6 million affected borrowers, effectively canceling 130 million months' worth of missed payments. The Department has announced that it will cancel $39 billion in student-loan debt owed to the U.S. Treasury by 804,000 of the affected borrowers starting August 13, 2023. Unless the Court issues a TRO or injunction, the Adjustment will unlawfully cancel even more debt owed to the Treasury at taxpayer expense in the future.

Plaintiffs are likely to succeed on the merits of their claims that the One-Time Account Adjustment was promulgated without statutory authority, failed to follow mandatory procedures, and is arbitrary and capricious under the Administrative Procedure Act ("APA"). Unless enjoined, Defendants will inflict irreparable harm not only on Plaintiffs but also on many other nonprofit organizations by undermining the competitive advantage PSLF provides to public-service employers when seeking to recruit and retain college-educated employees. The public interest also tips decidedly in favor of halting the Department's unlawful giveaway at taxpayer expense.

The Court should therefore grant Plaintiffs' motion for a TRO and preliminary injunction to stop the Department from cancelling any student-loan debt based on the One-Time Account Adjustment, including the $39 billion it plans to cancel on August 13.

## **RELEVANT FACTS**

### I.   LEGAL BACKGROUND

The Department administers student loan programs under Title IV of the Higher Education Act ("HEA") of 1965, 20 U.S.C. § 1070 et seq. Federal student debt exceeds $1.6 trillion and is owed

by approximately 45 million borrowers.[1]  Under the Federal Direct Loan program, which accounts for most student debt, the federal government makes loans directly to borrowers "using federal capital (*i.e.*, funds from the U.S. Treasury), and once made, outstanding loans constitute an asset of the federal government."[2] Congress has authorized several programs to provide forgiveness of direct loans for borrowers who make qualifying monthly payments for a specified number of years. Among these are the PSLF and IDR programs.

### A.    The PSLF Program

The College Cost Reduction and Access Act of 2007 (CCRA), Pub. L. 110-84, 121 Stat. 784, established the PSLF program. *See* 20 U.S.C. § 1087e(m). Under PSLF, "[t]he Secretary shall cancel the balance of interest and principal due … on any eligible Federal Direct Loan not in default for a borrower who" meets two statutory conditions. *Id.* § 1087e(m)(1). *First*, the borrower must have "made 120 monthly payments on [an] eligible Federal Direct Loan after October 1, 2007, pursuant to any one or a combination of [qualifying repayment plans.]" *Ibid. Second*, the borrower must be "employed in a public service job at the time of such forgiveness" and "ha[ve] been employed in a public service job during the period in which the borrower made each of the 120 payments." *Ibid.*

Qualifying repayment plans under PSLF include an IDR plan, the standard repayment plan, or a repayment plan with a monthly payment at least equal to the standard plan. *Id.* § 1087e(m)(1)(A). Additionally, under regulations in 2022, "the borrower must make the monthly payments within 15 days of the [plan's] scheduled due date for the full scheduled installment amount." 34 C.F.R. § 685.219(c)(1)(iii)(2022). Otherwise, the payment does not count toward the 120 monthly payments needed for PSLF forgiveness.

---

[1] Alexandra Hegji, Kyle D. Shohfi & Rita R. Zota, Cong. Rsch. Serv., R47196 *Federal Student Loan Debt Cancellation: Policy Considerations* 1 (2022).
[2] *Id.* at 2.

After making 120 qualified monthly payments while working full time for a public-service employer, a borrower is entitled to cancellation of all remaining obligations to repay his or her federal direct loans. 20 U.S.C. § 1087e(m)(2). While borrowers may file paperwork with the Department to track PSLF progress, they can also wait and seek forgiveness at the end of the 120-month payment-and-service period. As nonprofit entities under Section 501(c)(3) of the Internal Revenue Code, both Plaintiffs are public-service employers whom PSLF benefits. *Id.* § 1087e(m)(3)(B).

### B.    The IDR Programs

Direct student loan borrowers have access to four types of IDR plans, each of which caps monthly payments as a percentage of discretionary income and provides for forgiveness of the unpaid balance at the end of a repayment period—either 20 or 25 years, depending on the plan.[3] Three IDR plans are authorized under the "income-contingent repayment" (ICR) provisions of the Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, 107 Stat. 312, 347-48. *See* 20 U.S.C. § 1087e(e). And one IDR plan is authorized under the 2007 CCRA's "income-based repayment" (IBR) provisions. *See id.* § 1098e.  The chart below summarizes the IDR Plans.

### <u>Summary of IDR Plans</u>[4]

| Plan Name | Authority | Payment Cap | Repayment Period |
|---|---|---|---|
| Income-Contingent Repayment (ICR) | 20 U.S.C. § 1087e(e); 34 C.F.R. § 685.209(b) | 20 percent of income over poverty line | 25 years |
| Income-Based Repayment (IBR) | 20 U.S.C. § 1098e; 34 C.F.R. § 685.221 | 15 percent of income over 150 percent of poverty line for pre-July 2014 borrowers<br><br>10 percent of income over 150 percent of poverty line for post-July 2014 borrowers | 25 years for pre-July 2014 borrowers<br><br>20 years for post-July 2014 borrowers |
| Pay As You Earn (PAYE) | 20 U.S.C. § 1087e(e); 34 C.F.R. § 685.209(a) | 10 percent of income over 150 percent of poverty line | 20 years |
| Revised Pay As You Earn (REPAYE) | 20 U.S.C. § 1087e(e); 34 C.F.R. § 685.209(c) | 10 percent of income over 150 percent of poverty line | 20 years for undergraduate-only borrowers<br>25 years for borrowers with graduate loans |

---

[3] The Department promulgated a final rule that combines the different IDR programs into a single program with new parameters. *See* 88 Fed. Reg. 43,820. But most provisions of that rule do not come into effect until July 1, 2024, and the provisions that have an earlier effective date are not relevant for this complaint's claims.
[4] 20 U.S.C. §§ 1087e(e), 1098e; 34 C.F.R. §§ 685.209, 685.221.

All IDR plans provide for cancellation of unpaid balance at the end of the repayment period. A borrower must have spent every month during the repayment period—either 20 or 25 years— making "monthly payments" under a qualifying repayment plan or receiving individualized "deferment due to an economic hardship described in [20 U.S.C.] section 1085(o)." 20 U.S.C. §§ 1087e(e); 1098e(b)(7). Qualifying repayment plans under IDR are the same as for PSLF: an IDR plan, the standard repayment plan, or a plan with a monthly payment at least equal to the standard plan. *Ibid.*

Compared to PSLF, loan cancellation under IDR does not require public service but takes longer—20- or 25-years versus 10 years—which means the borrower must make more qualifying monthly payments—240 or 300 payments versus 120. Additionally, a borrower may credit economic hardship deferment under § 1085(o) toward the 240 or 300 qualifying monthly payments needed for IDR forgiveness, while PSLF does not allow any type of deferment to count.

Economic hardship deferment that counts toward IDR forgiveness may be granted by the Secretary to borrowers whose wages do not exceed the greater of the federal minimum wage or 150 percent of the poverty line; who receive means-tested public assistance; or who are in the Peace Corps. 20 U.S.C. §§ 1085(o), 1087e(f)(2)(D); 34 C.F.R. § 685.204(g)(2). Such deferment may not exceed three years, during which interest does not accrue. The HEA recognizes other types of deferment, including for long-term unemployment and military service, *see* 20 U.S.C. § 1087e(f), but only economic hardship deferment counts toward IDR forgiveness, *see id.* §§ 1087e(e)(7)(B)(i), 1098e(b)(7)(B)(v).

## II.   DEFENDANTS CREDIT FORBEARANCE TOWARD IDR AND PSLF FORGIVENESS

Forbearance under the HEA means "permitting the temporary cessation of payments, allowing an extension of time for making payments, or temporarily accepting smaller payments than previously scheduled." 34 C.F.R. §§ 682.211(a)(1), 685.205(a). Either a loan servicer or the Secretary of Education (Secretary) may grant forbearance under a variety of circumstances specified by the Department's regulations. *Ibid.* Neither the PSLF nor IDR provisions allow non-payments during

periods of forbearance to be counted as qualifying monthly payments for those programs. 20 U.S.C. §§ 1087e(m), 1087e(e)(7), 1098e(b)(7). Nor do non-payments during periods of forbearance count as economic hardship deferment under § 1085(o).

Nonetheless, on April 19, 2022, the Department announced in a press release that it would make a One-Time Account Adjustment that, for the first time, would count non-payments during certain periods of forbearance as "monthly payments" for purposes of loan forgiveness under PSLF and IDR.[5] The Adjustment "result[ed] in immediate debt cancellation for at least 40,000 borrowers" under PSLF, and "[m]ore than 3.6 million borrowers … receive[d] at least three years of additional credit toward IDR forgiveness."[6] The press release did not indicate that the 3.6 million affected IDR borrowers also received forbearance credited toward PSLF. Presumably, that is because they were not working for a public-service employer during their periods of forbearance.

The IDR credit alone is equivalent to cancelling at least three years' worth of student loan debt for each affected borrower. Each of the 3.6 million borrowers will make three fewer years of payments (36 monthly payments) before his or her debt is cancelled under IDR. The One-Time Account Adjustment thus will cost the Treasury at least 130 million forgone monthly loan payments. The Department did not estimate the cost to taxpayers of this giveaway. Aside from the 40,000 PSLF borrowers who received immediate debt cancellation because of the forbearance credit, the Department did not disclose the number of other PSLF participants who received forbearance. Nor did it identify legal authority for making this unprecedented one-time adjustment.

---

[5] U.S. Dep't of Educ. Press Release, Department of Education Announces Actions to Fix Longstanding Failures in Student Loan Programs, Apr. 19, 2022, https://www.ed.gov/news/press-releases/department-education-announces-actions-fix-longstanding-failures-student-loan-programs (last visited August 7, 2023).
[6] *Ibid.*

On July 14, 2023, the Department announced it will cancel $39 billion of student-loan debt owed by 804,000 borrowers under IDR plans.[7] It confirmed this cancellation "is part of the Biden-Harris Administration's implementation of the [one-time] payment [ac]count adjustment announced in April 2022."[8] The 804,000 "borrowers will be informed by the Department starting [July 14] that they qualify for forgiveness without further action on their part. Discharges will begin 30 days after emails are sent."[9] Thus, the unauthorized $39 billion cancellation will start on August 13, 2023.

## PLAINTIFFS' STANDING

To establish Article III standing, a plaintiff must plead: (1) an injury in fact; (2) that is fairly traceable to the challenged action of defendants; and (3) will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "For standing purposes, [courts] accept as valid the merits of [plaintiffs'] legal claims." *FEC v. Cruz*, 142 S. Ct. 1638, 1647 (2022). Plaintiffs have standing here for two reasons: (1) the Department deprived Plaintiffs of their notice-and-comment rights to protect their concrete interest in receiving the benefit of the PSLF program; and (2) the One-Time Account Adjustment undermined competitive benefits PSLF provides Plaintiffs.

## I.   PLAINTIFFS HAVE STANDING BASED ON INJURY TO THEIR PROCEDURAL RIGHT OF NOTICE AND COMMENT

"A plaintiff can show a cognizable injury if it has been deprived of 'a procedural right to protect [its] concrete interests.'" *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). "A violation of the APA's notice-and-comment requirements is one example of a deprivation of [such] a procedural right." *Ibid.* "When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested

---

[7] U.S. Dep't of Educ., Press Release, Biden-Harris Administration to Provide 804,000 Borrowers with $39 Billion in Automatic Loan Forgiveness as a Result of Fixes to Income Driven Repayment Plans, July 14, 2023, https://www.ed.gov/news/press-releases/biden-harris-administration-provide-804000-borrowers-39-billion-automatic-loan-forgiveness-result-fixes-income-driven-repayment-plans (last visited August 7, 2023).
[8] *Ibid.*
[9] *Ibid.*

relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

PSLF "promotes the interests of public service employers by providing significant financial subsidies to the borrowers they hire on the condition they remain employed in public service." *ABA v. Dep't of Educ.*, 370 F. Supp. 3d 1, 19 (D.D.C. 2019). As public-service employers that receive PSLF benefits, Plaintiffs have a concrete interest in PSLF's operation and continued vitality. *Ibid.* (holding nonprofit employer has standing to challenge agency action taking away its PSLF subsidy). Such interest includes the requirement that a borrower must make 120 qualifying monthly payments while working for public-service employers to receive cancellation of loans under PSLF. To the extent that the 120-month payment-and-service requirement is materially shortened, Plaintiffs' PSLF benefits will be diminished.

The One-Time Account Adjustment counts three years of forbearance toward that 120-month payment-and-service requirement for an undisclosed number of PSLF participants, thereby shortening their payment-and-service terms from 10 years to 7 years. Such a reduction impacts Plaintiffs' concrete interest in receiving the full benefits to which they are entitled under PSLF. The APA provides Plaintiffs with a procedural right to protect that concrete interest through notice and comment. 5 U.S.C. § 553. Plaintiffs suffered an injury to that procedural right when the Department issued the Adjustments through a press release rather than through notice-and-comment rulemaking. *EEOC*, 933 F.3d at 447. Plaintiffs' injury is traceable to the Department's action and is redressable because "there is some possibility [notice and comment] will prompt the [Department] to reconsider the decision" to shorten PSLF payment-and-service term for an undisclosed number of borrowers. *Massachusetts*, 549 U.S. at 518.

## II.   PLAINTIFFS HAVE STANDING BECAUSE THE ONE-TIME ACCOUNT ADJUSTMENT INFLICTS A COMPETITIVE INJURY

The Supreme Court "routinely recognizes probable economic injury resulting from governmental actions that alter competitive conditions as sufficient to satisfy the Article III 'injury-in-fact' requirement." *Clinton v. City of New York*, 524 U.S. 417, 433 (1998) (cleaned up). Under the well-established doctrine of competitive standing, an injury-in-fact occurs when a party's "position in the relevant marketplace would be affected adversely by the challenged governmental action." *Adams v. Watson*, 10 F.3d 915, 922 (1st Cir. 1993); *accord In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 213 (3d Cir. 2011); *Sherley v. Sebelius*, 610 F.3d 69, 73 (D.C. Cir. 2010); *Can. Lumber Trade All. v. United States*, 517 F.3d 1319, 1332 (Fed. Cir. 2008). There is no need to conduct empirical analysis to measure the adverse effects, such as lost sales or profits. *Id.* at 1333. Rather, a party need establish only that it is more likely than not that it will be placed at a relative disadvantage with respect to competitors by the challenged government action and may "fairly employ economic logic toward that end." *Ibid.* "Indeed, most 'competitor standing' cases depend on … [using] core economic postulates" to predict the impact of government action on third-party behavior. *Adams*, 10 F.3d at 923.

The Sixth Circuit recognizes "economic disadvantage" as injury-in-fact, *Sw. Penn. Growth All. v. Browner*, 144 F.3d 984, 988 (6th Cir. 1998), and has even warned that "the absence of competitor standing may render [unlawful] agency actions effectively immune from judicial review." *Dismas Charities, Inc. v. U.S. Dep't of Just.*, 401 F.3d 666, 677 (6th Cir. 2005). In *Browner*, a Pennsylvania manufacturing association challenged an agency's environmental designation that resulted in lower environmental-compliance costs for businesses in Ohio. 144 F.3d at 988. The Sixth Circuit found standing without inquiring whether lower compliance costs allowed Ohio companies to make sales that otherwise would have gone to Pennsylvania businesses. Rather, it was enough that reduced compliance costs gave Ohio companies "an economic advantage over [their] neighbors in southwestern Pennsylvania," which necessarily means a Pennsylvania manufacturer "suffers an

economic disadvantage compared to its Ohio neighbor. This economic disadvantage is an 'injury in fact' directly caused by the [agency]'s decision." *Ibid.* Here, the Adjustment likewise inflicts economic disadvantage on Plaintiffs and other public-service employers by undermining the competitive benefits that PSLF bestows upon public-service employers against private-sector companies in recruiting and retaining college-educated workers.

Plaintiffs are nonprofit employers that compete against private-sector employers in the labor market for employees who graduate from law school, graduate school, and four-year colleges. Approximately 45 million Americans have student-loan debt, which can be forgiven in its entirety under PSLF but only for those who work for ten years at a nonprofit employer like Plaintiffs. There is no comparable promise of debt forgiveness for private-sector work. By offering PSLF incentives to student-loan borrowers in the job market, Congress deliberately gave public-service employers like Plaintiffs a competitive advantage over private-sector employers, thereby "increasing recruitment and lowering labor costs" for public-service employers. *ABA*, 370 F. Supp. 3d at 19. Agency action that takes away or undermines PSLF necessarily injures public-service employers like Plaintiffs by increasing their labor costs and undermining their recruitment efforts. *Ibid.* (holding nonprofit employer has standing to challenge agency action taking away its PSLF subsidy). That is precisely what the One-Time Account Adjustment has done and continues to do.

By crediting an undisclosed number of borrowers with at least three years toward PSLF's payment-and-service requirement, the Department has effectively cut PSLF's 10-year requirement to only 7 years. But for the forbearance credit, affected PSLF participants must make qualifying monthly payments while working for a public-service employer for an additional three years to earn forgiveness. The One-Time Account Adjustment destroys that additional three-year incentive under PSLF to work for public-service employers, thereby reducing the competitive advantage PSLF confers on such employers. This competitive injury is clearest for the 40,000 PSLF participants whose debt was

immediately cancelled by the Adjustment. They each had fewer than three years remaining on their PSLF payment-and-service terms when the Department gave them three years of forbearance credits. In doing so, the Department entirely extinguished any PSLF incentive they had to continue working for a public-service employer, thereby eliminating the competitive benefits conferred by PSLF.

Crediting forbearance to 3.6 million IDR borrowers also injures public-service employers. Borrowers can simultaneously participate in IDR and PSLF, so they can have monthly payments capped by one of the IDR plans and have their debt cancelled after working only 10 years in public service jobs—as opposed to 20 or 25 years under IDR—provided they make all 120 qualifying monthly payments while working at a public-service job. 20 U.S.C. § 1087e(m). In addition to eliminating debt faster, forgiveness under PSLF requires a borrower to make 120 fewer monthly payments compared to forgiveness under a 20-year (240-month) IDR plan, and 180 fewer monthly payments compared to a 25-year (300 month) IDR plan. These fewer required payments for debt-cancellation under PSLF provide a significant financial incentive for borrowers to work for public-service employers like Plaintiffs instead of waiting for IDR forgiveness.

"More than 3.6 million borrowers … receive at least three years of additional credit toward IDR forgiveness" because of the One-Time Account Adjustment. The Department has effectively reduced IDR's 20-year monthly-payment requirement to only 17 years, and the 25-year monthly-payment requirement to only 22 years. In doing so, the Department made loan cancellation under IDR comparatively more attractive than PSLF before the agency action. For affected borrowers enrolled in a 20-year IDR plan, instead of receiving forgiveness 10 years faster under PSLF, they receive forgiveness only 7 years faster. And instead of saving 120 monthly payments under PSLF, they save only 84 monthly payments. For borrowers enrolled in a 25-year IDR plan, instead of receiving forgiveness 15 years faster under PSLF, they receive forgiveness only 12 years faster. And instead of saving 180 monthly payments under PSLF, they save only 144 monthly payments.

11

In both cases, the advantage of PSLF forgiveness over IDR forgiveness in terms of speed is reduced by three years. And PSLF's advantage over IDR in terms of financial value is reduced by 36 monthly payments. Over 3.6 million borrowers have less incentive to seek PSLF forgiveness by working for a public-service employer, as opposed to waiting for IDR forgiveness, because of the One-Time Account Adjustment. This in turn reduces the competitive benefits PSLF grants public-service employers like Plaintiffs. Competitive injury is clearest for the 804,000 borrowers whose total debt of $39 billion will be wiped away on August 13. They will have no remaining incentive to seek PSLF forgiveness by working at a public-service employer.

In short, PSLF provides less incentive to fewer borrowers to seek and maintain employment with public-service employers because of the One-Time Account Adjustment. That many public-service employers share Plaintiffs' competitive injuries does not reduce it nor otherwise affect Plaintiffs' standing. *Adams*, 10 F.3d at 924 ("[T]he Commissioner cannot carry the day on the claim that appellants' injury-in-fact is shared with so large a class (all out-of-state producers selling to Massachusetts dealers) that their respective shares of the aggregate injury will be minimal."). "To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *United States v. SCRAP*, 412 U.S. 669, 687 (1973).

In addition to suffering a competitive economic injury, Plaintiffs also satisfy the traceability and redressability elements of Article III standing. *See Lujan*, 504 U.S. at 560-61. The traceability standard is easily satisfied whenever, as here, "but for the defendant's unlawful conduct, [Plaintiffs'] alleged injury would not have occurred." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). A favorable decision would also redress Plaintiffs' injury by preventing the One-Time Account Adjustment from further eroding PSLF incentives and by restoring incentives that it has already undermined. Plaintiffs therefore satisfy all three elements of Article III standing.

12

## ARGUMENT

Courts balance four factors in deciding whether to issue a TRO or preliminary injunction: (1) whether the movant is likely to succeed on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the injunction harms others; and (4) whether the injunction serves the public interest. *Wilson v. Gordon*, 822 F.3d 934, 952 (6th Cir. 2016). The harm-to-others and public-interest factors "merge when the Government is the opposing party." *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) (citation omitted). These factors all favor injunctive relief in this case.

## I.   PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction [or] authority," or "without observance of procedures required by law." 5 U.S.C. § 706(2). Because One-Time Account Adjustment fits all these descriptions, Plaintiffs are likely to succeed on the merits.

### A.   Defendants Lack Statutory Authority to Count Forbearance as Monthly Payments for the PSLF and IDR Programs

#### 1.   *The Major Questions Doctrine Requires Clear Congressional Authorization for the One-Time Account Adjustment*

Modifying conditions of student-loan forgiveness to cancel billions in debt owed to the Treasury is a power of vast "economic and political significance" that triggers the Major Questions Doctrine, which requires "clear congressional authorization" for agency action. *Biden v. Nebraska*, 143 S. Ct. 2355, 2372 (2023). The One-Time Account Adjustment's price tag for just 804,000 affected IDR borrowers is $39 billion—implying a full cost of $175 billion for all 3.6 million borrowers—which marks it as economically significant. *See ibid.* (applying Major Questions Doctrine to $430 billion student-loan debt cancellation); *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) (*per curiam*) (finding $50 billion to be economically significant). The Adjustment's political significance is likewise

undeniable because "[s]tudent loan cancellation raises questions that are personal and emotionally charged, hitting fundamental issues about the structure of the economy." *Nebraska*, 143 S. Ct. at 2373-74 (citation omitted).

The Major Questions Doctrine is especially applicable because of the "separation of powers concerns" raised. *Id.* at 2375. The Department has asserted the power to count non-payments during periods of forbearance as a new way to satisfy PSLF's and IDR's respective forgiveness periods. But that would amount to an executive agency "amend[ing] … Acts of Congress" through a press release instead of bicameralism and presentment. *Clinton*, 524 U.S. at 438 ("There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes."). And because it results in the cancellation of debt owed to the Treasury, the Adjustment also implicates "Congress's … control of the purse." *Nebraska*, 143 S.Ct. at 2375 (citing U.S. Const., Art. I. § 9, cl. 7). As in *Nebraska*, the Department is once again implementing by administrative fiat a politically charged loan-cancellation program with a twelve-figure price tag. Accordingly, it must identify clear statutory authorization.

### 2. *The Plain Text of PSLF and IDR Provisions Forbids the One-Time Adjustment*

The Department falls far short of identifying clear statutory text needed to authorize the One-Time Account Adjustment. Indeed, the April 2022 press release announcing the Adjustment failed to identify *any* statutory authority. "If [an agency] is trying to hide its own elephant in a mousehole, it first must identify where in the … statute such a mousehole exists." *Jilin Forest Indus. Jinqiao Flooring Grp. Co. v. United State*s, 617 F. Supp. 3d 1343, 1367-68 n. 28 (Ct. Int'l Trade 2023). There is no mousehole because the plain text of statutory provisions governing PSLF and IDR makes clear that non-payments during periods of forbearance do not count as payments toward forgiveness under those programs.

PSLF authorizes forgiveness only if a borrower made "120 monthly payments" pursuant to qualifying repayment plans while working full time for a public-service employer. 20 U.S.C. § 1087e(m). The statute defines qualifying repayment plan as an IDR plan, a standard repayment plan, or a repayment plan with a monthly payment at least equal to the standard plan. *Id.* § 1087e(m)(1)(A). There are no exceptions. Even payments mistakenly made to nonqualifying plans did not count until Congress itself created a narrow exception in 2018.[10] "Moreover, periods of deferment or forbearance do not count toward the 120 qualifying payments." *Hyland v. Navient Corp.*, No. 18-CV-9031(DLC), 2019 WL 2918238, at *1 (S.D.N.Y. July 8, 2019). *Weingarten v. Devos*, 468 F. Supp. 3d 322, 328 (D.D.C. 2020) (explaining that forbearance does not count toward PSLF's 120 monthly payments requirement). The Department is therefore without statutory authority to count non-payments during periods of forbearance as qualifying payments for PSLF—and it may not bootstrap such authority by rewriting the statute administratively.

The same is true for IDR forgiveness, which is governed by 20 U.S.C. §§ 1087e(e)(7) (ICR, PAYE, and REPAYE plans) and 1098e(b)(7) (IBR plans). To receive IDR forgiveness, a borrower must have spent each month of a 20- or 25-year repayment period either making "monthly payments" under a qualifying repayment plan or receiving "deferment due to an economic hardship described in section 1085(o)." *Ibid.* The IDR provisions use the same definition of qualifying repayment plan as PSLF. *Compare* 20 U.S.C. §§ 1087e(e)(7), 1098e(b)(7) *with id.* § 1087e(m)(1)(A). Thus, forbearance from making monthly payments cannot count as qualifying monthly payments under IDR either.

Nor can forbearance count as economic hardship deferment under 20 U.S.C. § 1085(o), which may count toward IDR forgiveness. Forbearance may be granted by either a loan servicer *or* the Secretary under a variety of circumstances specified by the Department's regulations. 34 C.F.R.

---

[10] In 2018, Congress created the Temporary Expanded PSLF program, which authorized $350 million to be available on a first-come, first-served basis to borrowers who made some or all of their 120 payments on a nonqualifying repayment plan. Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, 132 Stat. 424, Div. H, tit. III, § 315 (2018), 405-06.

§§ 682.211(a)(1), 685.205(a). By contrast, only the Secretary may grant economic hardship deferment, 20 U.S.C. § 1087e(f)(2)(D), and only to borrowers whose wages do not exceed the greater of the federal minimum wage or 150 percent of the poverty line; who receive means-tested public assistance; or who are in the Peace Corps. *id.* § 1085(o); 34 C.F.R. § 685.204(g). Forbearance may be renewed indefinitely but interest accrues, 34 C.F.R. § 685.205(c), while economic hardship deferment is limited to three years but pauses interest, 20 U.S.C. § 1087(f)(2)(D). Forbearance and economic hardship deferment are different under the HEA, and the Department may not treat them as interchangeable.

Because non-payments during periods of forbearance constitute neither qualified monthly payments nor economic hardship deferment, the Department lacks authority to count forbearance toward IDR forgiveness and, again, unlawfully seeks to rewrite the applicable statutes administratively.

### B.    The Department Failed to Follow Procedures Required by Law

Even if the Department somehow had statutory rewrite authority—it does not—the One-Time Account Adjustment would still be unlawful because the Department failed to follow mandatory procedures. *See* 5 U.S.C. § 706(2)(D).

The APA and HEA respectively require substantive agency actions affecting federal student assistance to follow notice-and-comment and negotiated rulemaking procedures. *See* 5 U.S.C. § 553; 20 U.S.C. § 1098a. The APA prescribes a three-step procedure for notice-and-comment rulemaking: (1) issue a "notice of proposed rulemaking" in the Federal Register; (2) "give interested persons an opportunity to participate" through "public comment"; and (3) "promulgate the rule" with "a concise general statement of its basis and purpose." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 95-96 (2015). The HEA further requires negotiated rulemaking, which requires the agency to collaborate with

affected interest groups to develop a proposed rule affecting federal student assistance. *See* 20 U.S.C. § 1098a.

Agency action is substantive and thus requires notice and comment if it "affect[s] individual rights and obligations" and appears on its face to be "binding" or have the "force of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 301-02 (1979) (quoting *Morton v. Ruiz*, 415 U.S. 199, 232, 235-36 (1974)). Existing rules governing borrowers' eligibility for forgiveness under PSLF and IDR are substantive, and they were promulgated through notice-and-comment and negotiated rulemaking. Those rules do not allow payments during periods of forbearance to count toward the 120 monthly payments a borrower must make under PSLF, 34 C.F.R. § 685.219(c)(1)(iii), nor as monthly payments needed to obtain forgiveness under IDR, *id.* §§ 685.209(a)(6)(i), (b)(3)(iii), (c)(5)(iv), 685.221(f)(1).

Counting non-payments during periods of forbearance as qualifying monthly payments effectively amends existing PSLF and IDR rules to "affect[] individual rights and obligations" of at least 3.6 million borrowers and thus requires notice and comment under the APA. *Chrysler Corp.*, 441 U.S. at 301-02. The HEA further requires negotiated rulemaking because the One-Time Account Adjustment substantively amends existing student-assistance rules. 20 U.S.C. § 1098a. The Department's announcement of the One-Time Account Adjustment through a press release falls far short of these mandatory procedures.

### C.     The One-Time Account Adjustment Is Arbitrary and Capricious

The Court also must "hold unlawful and set aside" the One-Time Account Adjustment as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" 5 U.S.C. § 706(2)(A). That standard requires an agency to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). The agency must "look at the costs as well as the benefits" of the action. *Id.* at

54. When changing policies, an agency must further "assess whether there were reliance interests [in the prior policy], determine whether they were significant, and weigh any such interests against competing policy concerns." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020).

To start, the April 2022 press release claimed the One-Time Account Adjustment was needed to address "inappropriate steering into long-term forbearance" by loan servicers. But it neither defined inappropriate steering nor estimated how many borrowers were steered inappropriately. It instead granted forbearance credits to *all* borrowers who experienced long-term forbearance—including those whose forbearance was granted by the Secretary of Education—without regard for whether they were steered inappropriately by a loan servicer. Such an unexplained mismatch renders the Adjustment arbitrary and capricious. *Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("the agency's explanation [must be] clear enough that its path may reasonably be discerned.") (cleaned up).

Moreover, the Department failed to identify any statutory basis for the Adjustment. Nor did it attempt to estimate the cost to taxpayers for immediately cancelling the debt of 40,000 PSLF participants and accelerating the cancellation of debt for 3.6 million IDR participants, and thus could not have rationally weight costs and benefits. *State Farm*, 463 U.S. at 54. Finally, Defendants' failure to consider those reliance interests of public-service employers on PSLF benefits that are undermined by the One-Time Account Adjustment. *Regents*, 140 S. Ct. at 1913 (recognizing that persons develop reliance interests and "[i]t would be arbitrary and capricious to ignore such matters").

## II. IMMEDIATE INJUNCTIVE RELIEF IS WARRANTED

Without immediate injunctive relief, Plaintiffs will suffer irreparable competitive injury. Injury "is irreparable if it is not fully compensable by monetary damages." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citation omitted).

Cancellation of loans resulting from One-Time Account Adjustment permanently reduces—and in some cases eliminates entirely—the incentives under PSLF for affected borrowers to work at

public-service employers like Plaintiffs. *See* ECF 1-1 ¶¶ 11-12; ECF 1-2 ¶¶ 11-12. These injuries are irreparable because they are impossible to calculate. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) ("[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate."). Besides, there is no way for Plaintiffs to recover them through money damages against Defendants, who are immune to such liability. *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) ("The federal government's sovereign immunity typically makes monetary losses [caused by unlawful agency action] irreparable."). Moreover, "[o]nce a loan is forgiven, it cannot easily be undone." *Faust v. Vilsack*, 519 F. Supp. 3d 470, 477-78 (E.D. Wis. 2021). Competitive injuries caused by unlawful cancellation—including $39 billion scheduled to start on August 13—can only be prevented by a TRO or preliminary injunction now. *Id.* (granting TRO against unlawful debt-cancellation program).

When the party opposing an injunction is the federal government, the balance-of-harms factor "merge[s]" with the public-interest factor. *Wilson*, 961 F.3d at 844. An injunction would serve the public interest by saving taxpayers $39 billion and obviate the messy process of unwinding an unlawful cancellation of debt. And, in any event, "the public's true interest lies in the correct application of the law." *Kentucky v. Biden*, 23 F.4th 585, 612 (6th Cir. 2022). On the other hand, delaying the imminent cancellation will not harm affected borrowers because they are under no immediate obligation to repay loans.[11] Moreover, equity favors a TRO because Plaintiffs filed suit promptly after the Department announced the $39 billion cancellation on July 14.[12] The balance of interests clearly favors an injunction.

---

[11] Monthly payments will not resume until October 1, 2023, and the White House announced a 12-month "on ramp" that allows borrowers to avoid penalties for not making required payments until October 2024. *See* The White House, FACT SHEET: President Biden Announces New Actions to Provide Debt Relief and Support for Student Loan Borrowers, June 30, 2023, https://www.whitehouse.gov/briefing-room/statements-releases/2023/06/30/fact-sheet-president-biden-announces-new-actions-to-provide-debt-relief-and-support-for-student-loan-borrowers/ (last visited July 26, 2023).

[12] The Department' April 2022 announcement of the One-Time Account Adjustment through a press release did not put Plaintiffs on notice. Public-service employers are not expected to monitor all agency press releases to protect their interests. That is why substantive rules must undergo notice-and-comment procedures.

### III.   THE SCOPE OF THE TRO OR INJUNCTION MUST BE NATIONWIDE

The One-Time Account Adjustment inflicts nationwide competitive injury on Plaintiffs and other nonprofit employers by taking way their PSLF benefits. A nation injunction is necessary to protect Plaintiffs from that ongoing injury because a narrower injunction "would be impractical and would fail to provide complete relief." *Nebraska*, 52 F.4th at 1048, *affirmed*, 143 S. Ct 2355 (halting similar unlawful student-loan cancellation scheme).

Even courts that firmly disfavor nationwide injunctions have recognized their necessity in other cases involving unlawful debt cancellation. *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1295 (M.D. Fla. 2021); *Faust*, 519 F. Supp. 3d at 478. *Wynn* and *Faust* concerned the Secretary of Agriculture's decision in 2021 to provide debt relief to farmers based on racial categories. In *Wynn*, The Middle District of Florida held raced-based debt relief violated the Equal Protection Clause and issued a nationwide injunction. 545 F. Supp. 3d at 1295. The court "proceed[ed] with great caution in determining that an injunction that will have nationwide effect is warranted," and "despite exploring any possible more narrow option," it could not identify any relief short of a nationwide injunction that could "provide Plaintiffs the opportunity to obtain any relief at all." *Id.* at 1294-95. The *Faust* court reached the same conclusion when it issued a nationwide TRO to halt the same race-based debt-relief program. 519 F. Supp. 3d at 477-78.

This debt-relief case presents very similar issues in terms of the appropriate scope of injunctive relief. As in those cases, the injury is not inflicted by agency action toward a plaintiff, but rather by unlawful debt relief for nonparties nationwide. Hence, the injunction must prevent unlawful action as to those nonparties on a nationwide basis. *See Nebraska*, 52 F.4th at 1048.

### CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for a TRO and preliminary injunction.

August 7, 2023

Respectfully submitted,

/s/ Sheng Li

SHENG LI
Litigation Counsel
RUSSELL G. RYAN
Senior Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
Sheng.Li@ncla.legal

21

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 7, 2023, I caused the service of this memorandum of law to

be delivered by certified mail on the following Defendants:

Dr. Miguel Cardona
Secretary of Education
U.S. Department of Education
400 Maryland Ave, SW
Washington, DC 20202

Richard Cordray
U.S. Department of Education
400 Maryland Ave, SW
Washington, DC 20202

U.S. Department of Education
400 Maryland Ave, SW
Washington, DC 20202

Hon. Merrick Garland
US Attorney General
US Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530

I further certified that, on August 7, 2023, I caused hand service of this memorandum of law

to be delivered by process server on the United States Attorney for the Eastern District of Michigan

at the following address:

Dawn N. Ison, United States Attorney
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, MI 48226

I further certified that, on August 7, 2023, I emailed the attached memorandum of law to

counsel for Defendants at kate.talmor@usdoj.gov  and cynthia.f.liao@usdoj.gov.

/s/ Sheng Li
Sheng Li